UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| **JUAN D. MENDOZA PORTILLO,** | )<br>)<br>) |
| **Plaintiff,** | )<br>) |
| v. | ) Civil Action No. _____<br>) |
| **EQUIFAX INFORMATION SERVICES, LLC**<br>SERVE: Corporation Service Company, Reg. Agent<br>100 Shockoe Slip, FL 2<br>Richmond, VA 23219-4100 | )<br>)<br>)<br>)<br>)<br>)<br>) |
| **Defendant.** | )<br>) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, Juan D. Mendoza Portillo, by counsel, and for his Complaint against Defendant Equifax Information Services, LLC ("Equifax), he states as follows:

**PRELIMINARY STATEMENT**

1. This is an action for statutory, actual, and punitive damages, costs, and attorney fees brought to enforce Plaintiff's civil rights pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

2. Equifax, Experian, and Trans Union are the USA's major consumer reporting agencies (hereinafter, these 3 are collectively referred to as the "CRAs", and Equifax is referred to as the "Defendant CRA" or "CRA Defendant").

3. The Fair Credit Reporting Act provides federally codified protection of Plaintiff's civil rights with regard to Plaintiff's privacy, Plaintiff's reputation, and Plaintiff's due process rights against defamation. The Fair Credit Reporting Act is part of a larger category of consumer protection statutes designed to arm consumers against discrimination, intrusions upon privacy, and

other types of unfair and inequitable treatment. Similar statutes falling under this same umbrella of protection include, for example, the Equal Credit Opportunity Act, the Fair Housing Act, and the Fair Debt Collection Practices Act.

4. Claims under these federal protections are brought "in connection with any action involving a claim of 'unlawful discrimination'", as described in 26 U.S.C § 62(a)(20). For the purposes of 26 U.S.C § 62(a)(20), the term "unlawful discrimination" is broadly defined in 26 U.S.C § 62(e) to mean "an act that is unlawful under . . .[a]ny provision of Federal, State, or local law, or common law claims permitted under Federal, State, or local law . . . providing for the enforcement of civil rights".

5. The FCRA demands that CRAs utilize reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b). When a consumer disputes an item of information, the agency must investigate the dispute and, if the information cannot be verified, delete it. 15 U.S.C. § 1681i.

6. The FCRA's accuracy provision demands that CRAs take actual steps to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from their customers, the "furnishers", particularly when a consumer makes a dispute about information reported.

7. Plaintiff brings claims under Section 1681e(b) against Equifax because it reported inaccurate account information about Plaintiff regarding an automobile loan with Westlake Service Inc. ("Westlake").

8. The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017). This is particularly

true as to how Equifax has complied with their now 50-year-old obligation to conduct a meaningful accuracy investigation. Equifax has been repeatedly sued by consumers, sanctioned by regulators, and reprimanded by both District and Appellate courts to do more than an automated parroting of what their customer-creditors instruct. Had Equifax followed that advice and heeded those warnings, Plaintiff would not have been harmed.

## JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

10. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to Plaintiff's claims occurred in this District and Division, and Plaintiff resides in this District and Division.

## PARTIES

11. Plaintiff is a natural person residing in the Commonwealth of Virginia, and at all times relevant to the Complaint was a "consumer" as defined by 15 U.S.C. § 1681a(c).

12. Equifax is a foreign limited liability company authorized to do business in the Commonwealth of Virginia through its registered agent in Richmond, VA.

13. Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

14. Equifax disburses consumer reports to third parties under contract for monetary compensation.

**FACTUAL ALLEGATIONS**

*Sections 1681e(b) of The Fair Credit Reporting Act Requires Substantive Investigations and Prohibits Mere "Parroting" of the CRA Defendant's Creditor-Customers*

15. "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . In enacting FCRA Congress adopted a variety of measures designed to ensure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

16. "The . . . FCRA . . . was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and reasonable manner." *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995) (citations omitted). "'These consumer oriented objectives support a liberal construction of the FCRA,' and any interpretation of this remedial statute must reflect those objectives." *Cortez v. Trans Union, LLC,* 617 F.3d 688, 706 (3d Cir. 2010) (quoting *Guimond,* 45 F.3d at 1333).

17. Over a decade ago, the Third Circuit apprised Trans Union of the high duty of care imposed by Section 1681e(b):

> [T]he distinction between "accuracy" and "maximum possible accuracy" is not nearly as subtle as may at first appear, it is in fact quite dramatic….
>
> There are, of course, inherent dangers in including any information in a credit report that a credit reporting agency cannot confirm is related to a particular consumer. Such information is nearly always "used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for ... credit." 15 U.S.C. § 1681a(d)(1). Allowing a credit agency to include misleading information as cavalierly as Trans Union did here negates the protections Congress was trying to afford consumers and lending institutions involved in credit transactions when it enacted the FCRA….
>
> Congress surely did not intentionally weave an exception into the fabric of the FCRA that would destroy its remedial scheme by allowing a credit reporting agency to escape responsibility for its carelessness whenever misleading information finds its way into a credit report through the agency of a third party….
>
> Trans Union remains responsible for the accuracy in its reports under the FCRA and it cannot escape that responsibility as easily as it suggests here. Congress clearly intended to ensure that credit reporting agencies exercise care when deciding to associate information with a given consumer, and the record clearly supports the jury's determination that Trans Union did not exercise sufficient care here.

*Cortez v. Trans Union, LLC,* 617 F.3d 688, 709-10 (3d Cir. 2010).

18. Section 1681e(b) sets forth the CRAs' overall du[t]y:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

19. Further, as Equifax is aware, Courts have held that even though the term "investigation" is not used in § 1681e(b), it is clear that CRAs have a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . .." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

20. It has long been the law – since 1970 in fact – that:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Federal Trade Commission, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

### *Plaintiff Discovers that Equifax was Reporting the Inaccurate Westlake Account*

21. On or around March 24, 2024, Plaintiff met with a mortgage loan originator and attempted to obtain pre-approval for a mortgage.

22. During that meeting, the loan officer informed Plaintiff that he could not obtain pre-approval for a mortgage because of the Westlake car loan on his Equifax credit report.

23. Specifically, Equifax was reporting a Westlake automobile loan in the amount of $13,287 as belonging to Plaintiff.

---

[1] Available at https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.

24. The information was inaccurate. Plaintiff has never had an automobile loan with Westlake.

25. Although the information was subsequently deleted, Plaintiff was denied the opportunity to purchase a house due to Equifax's inaccurate reporting.

26. If Equifax had maintained reasonable procedures to assure maximum possible accuracy of the information it pushed in the reports it created about Plaintiff, Plaintiff would not have been denied pre-approval to purchase a home.

### *Plaintiff Suffered Actual Harm*

27. As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

    a. Denial of credit;

    b. Monies lost by attempting to fix his credit, e.g., communication costs, postage for disputes;

    c. Loss of time attempting to correct the inaccuracies;

    d. Stress associated with attempting to resolve this matter; and

    e. Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life.

### *Defendant's Conduct was Willful*

28. The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007). A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

29. Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

30. As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years. The language of § 1681e(b) has not changed. The FCRA's caution of Defendant's "grave responsibilities" to ensure accuracy has not changed.

31. The CFPB has maintained a Consumer Complaint database since 2017. It receives a small percentage of the total consumer credit reporting complaints made nationwide, as many multiples more are made directly to the Defendant, and/or to other government agencies, attorneys, or non-profit organizations.

32. Equifax regularly receives unredacted consumer dispute details from this database.

33. Since the database began accepting complaints, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Equifax.

34. Over 230,000 of the CFPB complaints against Equifax were based largely on Equifax reporting information that belonged to someone else on a consumer's report.

35. Equifax has long been on notice regarding its inadequate matching procedures.

36. Equifax is aware that its matching procedures create the risk of including someone else's information on a consumer's report.

37. Equifax has the ability to increase the accuracy of its matching algorithm, and yet it specifically chooses to not do so.

38. Equifax's procedures imposed on Plaintiff an unjustifiable and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

8

## CLAIM FOR RELIEF

### COUNT I:
### VIOLATIONS OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681e(b)
*against Equifax*

39. Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

40. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff when it reported the inaccurate Westlake account information.

41. As a result of Equifax's violation of 15 U.S.C. §1681e(b), Plaintiff suffered actual damages, including but not limited to: denial of credit; harm to his reputation, lost credit opportunities, lost time attempting to get the errors fixed, money spent on postage, and mental and emotional aggravation and distress.

42. The violations by Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

43. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

**DEMAND FOR RELIEF**

Plaintiff therefore respectfully requests that this Court:

(1) Award Plaintiff actual and punitive damages for violations of the FCRA by Equifax;

(2) Award Plaintiff attorney's fees and costs under the FCRA;

(3) Award Plaintiff pre-judgment and post-judgment interest at the legal rate; and

(4) Award other relief as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED**.

                               **JUAN D. MENDOZA PORTILLO**

                               By:

                               /s/ Drew D. Sarrett
                               Drew D. Sarrett, VSB #81658
                               CONSUMER LITIGATION ASSOCIATES, P.C.
                               626 E. Broad Street, Suite 300
                               Richmond, Virginia 23219
                               Telephone: (804) 905-9900
                               Facsimile: (757) 930-3662
                               Email: drew@clalegal.com

                               *Counsel for Plaintiff*